Mr. Gallagher. Good morning, Your Honor. I'd like to reserve, I think this is a 15-minute argument. It is. I'd like to reserve three minutes if I may. So let's put 12 on the clock. My math is right. You're on. High school football game. Your Honor, my name is Tony Gallagher. I'm the federal defender for the District of Montana and I represent Elmer Red Eagle Jr. in this case. There are a number of issues which I have raised in my briefs. I would, without abandoning any of Mr. Red Eagle's points, in the time that I have allotted to me, I'd like to address first of all the district court's calculation of the advisory guidelines, focusing there specifically on the enhancement, the five-point enhancement for repeat dangerous offender. If I have time, I'd also like to address the district court's reliance on Mr. Red Eagle's criminal history. Of course, if the court has any questions with regard to the other issues, I'd be more than happy to try to address those. If the guidelines were improperly calculated, then the sentence imposed was not procedurally reasonable. And therefore, the advice given was unreasonable and the sentence ultimately is unreasonable. Of course, there's no one case that has been cited by either of the parties that is dispositive of the issue under 4B, the repeat sexual offender issue. It is a unique issue, especially with respect to its interplay of the advisory guidelines and the 1B section, where the guidelines or the guideline commission attempts to explain to a district court how these particular provisions should be utilized when a sentence such as Mr. Red Eagle's comes about. And we're here talking about two separate offenses, an offense which occurred sometime in 2000 and an offense which occurred sometime in 2005. Both offenses were tried at the same time. And normally, that wouldn't necessarily be a dispositive or an important issue, but it is here because of the non-existence in 2000 when Count 1, the offense involving TRE, came about. When the offense involving MRD came about, the repeat sexual offender section was in effect and had been in effect since and in B1, 1.11B1. Then the commission goes on to talk about the one book rule. And you talk about 1B1.11B2, in which the commission says that a guidelines manual in effect on a particular date must be implied in its entirety. Then you go to the two offenses section, which is 1B11B3, which says if the defendant is convicted of two offenses, first committed before and the second after a revised edition of the guideline manual became effective, the revised edition of the manual is to be applied to both offenses. Then we have Ortlund. And Ortlund says in that particular case, of course, we're dealing with a fraud, and there was an update in the fraud guidelines and the amount of monies that were involved that worked to Mr. Ortlund's disadvantage. And because the counts spanned a number of years, the court said that in that particular instance, you don't apply the one book rule. You really look at the first count and apply the old one, look at the second count, apply the new one, group them together, you come out with the result. What's the date of the offense in the second count? The second count is 2005. It's well beyond. There's about five years' difference? Yes, sir. The problem here, counsel, I want to make sure I understand this, is that the enhancement for the two sexual crimes occurs, the enhancement in the guidelines doesn't show up until after the commission of the first offense. Right. It shows up before the second offense. Right. So he gets an enhanced sentence for having the two offenses because of this intervening change in the guidelines. Now, what makes this an the ex post facto laws are there so that people are on notice as to what would constitute a crime and what will get them in trouble? That's true. And that's an oversimplification, but that's the general thing is that we're trying to give notice to people. So we're not making things crimes after people have already committed the offense. Mr. Red Eagle was already on notice that if he committed a second offense, that he would draw an enhanced sentence. He's not on notice of that if he commits two offenses before he commits the first one, but he is before he commits a second one. So what's the ex post facto problem here? Well, I have two responses to that. We have to recall that in this particular case, both offenses were tried in the same trial. As a practical matter, he wasn't guilty of anything when this trial started. He's presumed to be innocent. So he's not really on notice that he committed a prior act. So while I totally agree with you, Judge Byte, that that's what the clause is all about. Put people on notice that they can't do these things. Make sure that they understand what the penalty is. In this particular case, it's a unique circumstance. The prior offense and the subsequent offense are tried in the same action. Secondly, I'm sorry. I'm taking a deep breath, but we are at least clear that he was on notice as of the commission of the 2000 offense that it was an offense. Oh, absolutely. Yeah, so even though he doesn't realize as of the time of the change in the guidelines that he has been previously convicted of this and therefore is liable if he commits a second offense, he is at least on notice that what he has done in 2000 is plainly an offense chargeable under the laws of the United States. Assuming arguendo that he admitted that he did the offense in 2000. And then he would know that if he did it again, that the two together would be chargeable at a much higher rate than the two separately. I mean, that assumes a lot of things, but first of all, it's practically not what happened here. He's presumed to be innocent of the offense that occurred in 2000. That presumption carries with him throughout the trial. That's what judges tell juries. That he is presumed to be innocent until he's adjudicated guilty, until he's proved guilty beyond a reasonable doubt. In this particular case, that didn't happen until the same instant or just a few moments later, he was found guilty of the second offense. So my second point though is, and it's because 4B, the repeat sexual offender section, didn't come into existence until after the first offense was committed. Let's assume we agree there's at least the potential for an ex post facto problem in the way in which this sentencing was applied in this case. The district court stated an alternative ground, did it not? Absolutely, Your Honor. And I, which is why I'd also like to discuss his prior record. And I use that cautiously because it's really not a criminal record and I'll get into that. And yes, absolutely, Judge Lovell did state an alternative ground. He had mentioned before trial that he put the parties on notice that he was considering a departure because of Mr. Redigal's criminal history. He put the parties on notice that he believed that Mr. Redigal's criminal history was horrendous. And during his colloquy with the counsel, Mr. Redigal, at the time of sentencing, he said, even if I didn't apply these five points and take you to the life sentence, I would have departed to give you the life sentence, or under the power I've been granted by the Supreme Court in Booker, I would have given you the life sentence. But he based that, we say, on unconstitutional grounds. Because of the manner in which Mr. Redigal's criminal history was adjudicated, the vast majority, the vast majority of his quote unquote convictions were in tribal court. And we've mentioned to our court, mentioned to this court, both in our opening brief and in our reply brief, the constitutional infirmity of those tribal court convictions. Why? Why? He has not granted counsel appointed by the tribal government, paid for by the tribal government. We have the same situation in tribal court as we did in Alabama, in Mississippi, and so many other courts in the South where individuals of a certain race were not granted a free lawyer. These were misdemeanors, weren't they? Oh, they are indeed misdemeanors. But they are also what the judge relied upon in talking about this significant tribal record. And yes, that's my next point. These are all misdemeanors. And this court has said incoherently that they must be significant, serious prior offenses. By definition, a misdemeanor is not a serious offense. Now, the judge looking at those, the names of those cases, and the types of crimes that were charged, said that he had a serious prior criminal record. Not only were they unconstitutionally infirmed because he wasn't given a free lawyer, but they're all misdemeanors. And in some instances, although I admit that in the PSR his criminal history goes on for 17 odd pages, there are a lot of those that are mere dispositions, dismissals, fines only, deferred sentences, alternative sentences, suspended sentences, jail time. And no jail time in any time is more than 365 days because they're all misdemeanors. By definition, they're not serious. That's the nature of criminal proceedings in tribal court, isn't it? Yes, sir. They don't have felony jurisdiction? No, sir. And rightfully so, because of these lack of constitutional safeguards. Is there any case that says tribes cannot apply their tribal code to their members under misdemeanor guidelines and not provide counsel, that there's something constitutionally wrong with that? Well, you have to remember that the tribes are sovereign. And they certainly are permitted to provide whatever rights they determine are appropriate under the tribal court system. How that applies, though, to the federal system is a completely different story. That's why Canadian convictions are not necessarily counted in one's criminal history. That's why foreign convictions are not necessarily counted in one's criminal history. That's why tribal convictions are not counted. Because they're not afforded the same rights as we enjoy in federal court. Okay. As far as I reserve the remainder of my time. Thanks for coming in today. We'll hear from the government at this time. Mr. Archer? Thank you, your honor. Brian Archer for the United States. May it please the court. This case involved an especially egregious and brutal sexual assault on the defendant's two minor daughters. Including one of the, in addition to one of their 14-year-old friends. It included acts where the defendant raped TRE, his nine-year-old daughter. And when she was screaming in pain, he stopped, he got the family cat, he gave it to her to comfort her, and he continued raping her. With regard to MRD, she's a 14-year-old. He supplied her with alcohol, he got her drunk, she was passed out on the bed in his house. And he proceeded to go in and rape her while she was passed out. To the point where she didn't even remember being raped. She couldn't testify at trial that she was raped because she was passed out. These are especially brutal acts. The district court recognized that. The district court recognized that the defendant in this case came in and he lied about it in the courtroom. He had confessed earlier and he came in the courtroom and made up a story out of whole cloth. Let's imagine that when Judge Lodge went out to sentence in this case, he had concluded after conferring with his law clerk and reading the PSR, that there was indeed an ex post facto problem in applying the 4B1.5 to the 2000 offense. And that it would be problematic to take into consideration the tribal court convictions or history because some of them in fact were not convictions at all. And even as to the convictions, he didn't have counsel because the tribe under its sovereignty didn't provide it. With that long-winded windup, could he have gotten to a life sentence with those off the table? Yes, Your Honor. He could have. And I think he did. Explain how. Yeah, the defense in its briefing and argument has pigeonholed the district court as relying on this extensive criminal history. That's not how I read the record. I'm not concerned with their arguments right now. I want you to tell the panel how with the things I described completely off the table, he could have gotten to a life sentence. Your Honor, I believe I cannot explain it better than the judge did himself. And so I'd like to just walk through his reasoning. On excerpt of record, page 18 at 29, he starts the analysis of the 3553A factors. He starts out with the nature and circumstances of the offense. First off, he talks about the criminal history and the likelihood of recidivism, but we're going to take that off the table. The second part is of the nature and circumstances of the offense. Judge Lovell specifically focused on the fact that this case shows that the defendant is a predatory pedophile. And as my introduction just showed, this case involves brutal facts of the rape of his own daughters, the sexual abuse of his own daughters, and the sexual abuse and rape of a passed out 14-year-old in his house who he got drunk. Judge Lovell specifically relied on that and found that this defendant was a predatory pedophile. Second, Judge Lovell then moves to the factors of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment. Judge Lovell relied on the fact that there's the need for deterrence in this case. He noted that the defendant continued to torment the victims and witnesses after he was convicted. And that was also egregious conduct. Once he was convicted, he wrote letters to newspapers and the media in his small town of Hoplar, which is a town of 1,500 people, saying that the agent had lied on the stand, that his wife had lied on the stand, that his daughter was dead to him. This is egregious conduct after you've had a conviction of this nature. And the judge pointed that out. The judge also then moved to the priority consideration. And I think this is really relevant if we're taking the criminal history off the table. Judge Lovell specifically said in his findings that it's a priority consideration to protect the public. And that this sentence that he imposed, the life sentence, was the least sentence that would do the necessary job. Those are his specific words. Well, let me interject and see if I can trim it down a little bit closer. Did he, there was an enhancement for obstruction of justice slash perjury? Yes. And there was an enhancement for vulnerable victim? Yes. Were those needed, again, with the other things off the table, did he need those enhancements to get to a life sentence? Your Honor, I believe that in this case, the judge focused on the 3553A factors to get to the life sentence. I believe he calculated the guideline range, as he must do, but- What was the guideline range before enhancements? Before enhancements, the guideline range would have been, well, it was a level 39 before the five level enhancement. And then if you took away two for acceptance, or if you took away two for the vulnerable victim obstruction, you get down to 35. I'm not sure off the top of my head what range that would have put him in. But I believe that the judge was convinced that a life sentence was the least sentence that was necessary in this case. Can you tell us what the guideline range would have been with the obstruction and the vulnerable victim enhancements? But without the five points? Yeah. Again, I don't have the guideline manual in front of me, so I'm not sure what the range on that would have been. Is the obstruction of justice, is that the bribery, the attempted bribery claim? Yes. Or the obstruction, he relied on two things with the obstruction of justice. The two things are the bribery and then the fact that he committed perjury in open court in his testimony at trial. I want to respond, though, to the defense's argument that the judge here was not entitled to rely on the tribal record and the fact that the tribal record did not involve serious crimes. While they may be classified as misdemeanors because the tribes don't have jurisdiction over felonies, one of those convictions was for the rape of MRD, the very crime that he was convicted of in this case. Certainly, you can't say that that's not a serious offense. And there's a lot of discussion in the briefs of the Supreme Court case of Nichols v. United States. And I think Nichols v. United States is very clear that courts can consider defendants' past criminal behavior even if no conviction resulted. So Nichols comes out and says, look, under the sentencing analysis here, whether or not you're convicted, you can consider the defendant's past criminal behavior. And that's a valid consideration in sentencing. In this case, it's not an issue that the defendant wasn't represented in the tribal courts. It's not an issue because he didn't receive any criminal history points for that. He was thus in criminal history category one. And that's what the judge is coming to the bench seeing. The judge comes to the bench. He sees that this is an individual whose tribal record takes up 17 pages of the PSR. It includes domestic abuse. It includes DUIs. It includes all sorts of offenses that on their face are serious offenses. And yet he gets no criminal history points for that. Under the guidelines, criminal history category one puts you in least likely to recidivate category. Now clearly the district court is looking at this 17 pages of tribal history, thinking this person is not in the least likely to recidivate category. I don't think by any means that can be said to be an abuse of discretion to find that this extensive criminal history is certainly underrepresented in the sentencing factors under the guideline analysis. And so I think you still can look at the fact of these convictions. With regard to the ex post facto issue, I would like to address that. I think Judge Bybee was correct to point out that if he just commits the acts in count one, which happened before the five level enhancement, the amendment there. If he just commits that offense, he doesn't qualify for that five level enhancement. He has to show the pattern and practice of the sexual abuse and sexual assaults. And that only happens when he commits the second offense. The second offense occurs after the amendment in this case. What do you say to Mr. Gallagher's point that it would have been one thing if he'd been previously convicted on the 2000 sexual acts and then committed the acts in 2005. But that these were charged and tried together so that while he had committed whatever acts he had committed in 2000, he had not been charged of them until a time when he could be given an additional sentence for that. Your Honor, under the commentary to 4B1.5B1, you don't have to be convicted at all to show the pattern and practice of the sexual conduct in this case. So the enhancement could have been applied to the acts he engaged in with ARE, his other daughter, whose acts weren't charged in this case. There was no conviction. The enhancement could have been applied based on that conduct. The enhancement could be applied based on the conviction in count one. The fact that the conviction hadn't occurred is irrelevant because the guidelines specifically doesn't require there to be a conviction. So he simply engaged in the conduct. Then he engaged in the conduct again after the amendment, which qualifies the previous acts. So essentially, I don't believe in the end that there is an ex post facto issue in this case because count one was simply a predicate act that qualified him for the enhancement, which he wouldn't have been, which wouldn't have been given to him if he hadn't have committed the post-amendment act. Unless there are questions on any of the other issues. I don't see any. Thank you very much for coming in today. Rebuttal, Mr. Gallagher. Thank you very much, Your Honor. I'm going to try to be brief and I don't think I'll use my full three minutes. Mr. Archer made reference to the letters that were sent post-trial and then I think he was responding to a question by Judge Bybee and he corrected himself that the district court below did not rely on those letters. And that's at page 13 of the excerpts of record. Very well. I think you might have a tough time persuading the court that a post-trial letter to the editor really is a serious obstruction of justice. The answer to Judge Bybee's question is 262 to 327. That would have been the guideline range had the five points not been added. Or perhaps that was Judge Hawkins' question, I don't recall. 262 to 327. So we're talking about a sentence now on to 25 years. How old is the defendant? Defendant, I believe Elmer, excuse me, I believe Mr. Red Eagle is 44. That would have been the, that's for the 39 points? Yes, sir. Okay. Mr. Gallagher, what do you say to counsel's argument about the ex post facto, that you do not have to, it does not require a conviction, only conduct? That's what the commentary says. Okay, so your point, which was a very interesting one, about the fact that the 2000 and the 2005 acts were tried together, then sort of falls out, doesn't it? No. It doesn't fall out because of the action of the guidelines themselves, when we go to that commentary. If the government had chosen not to charge count one, and then use count one as the predicate offense as the government has tried to indicate that it would have done under the commentary. Then we have a completely different argument with regard to whether or not it should be preponderance of the evidence to add that five points. Or some other more stringent standard when it has such an impact on one sentence. Yeah, it does shift the arguments, but it does knock out the ex post facto argument. Most respectfully, your honor, I disagree. It doesn't kick it out because under our analysis of Portland and the 1B.11 ABC subsections, the one point, the one book rule that should be applied here is the 2000 book. Because it's that offense to which the 4B makes this a five point addition. And that's why Portland, which says you use two books, you should use the earlier book, and that's what I contended in the district court, and that's what I've contended in my opening and reply papers. That Portland is not controlling. This is a unique circumstance, and because of that enhancement, and because the enhancement case and the predicate case were tried together, we've got to use the predicate case to avoid the ex post facto result, my time is up. Thank you. Thank both counsel for their arguments. The case just argued will be submitted for decision. And we'll proceed to the last case on the argument calendar this morning, which is Wilson v. Bellecoup. Thank you.
judges: Nelson, Hawkins, Bybee